IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EVE M. DAVIS,             )
                             )
             Plaintiff,     )
                             )
v.                         )     Civil Action No. 3:15cv387–HEH
                             )
WAL-MART STORES     )
EAST, L.P., *et al.*       )
                             )
             Defendants.   )

## MEMORANDUM OPINION
### (Granting Motions to Dismiss by Defendants Wal-Mart and Greer)

This matter arises from the arrest of Plaintiff Eve M. Davis ("Plaintiff" or "Davis") on October 5, 2013, following her attempt to fill a prescription at a Wal-Mart store. Brenda Greer ("Greer"), the Wal-Mart pharmacist assisting Davis, suspected the prescription was fraudulent and notified law enforcement. Spotsylvania County Sheriff's Deputy James V. Harney, Jr. ("Deputy Harney" or "the Deputy") responded to the Wal-Mart store and eventually arrested Davis, who was subsequently prosecuted by Assistant Commonwealth's Attorney Stephanie C. Fitzgerald ("Fitzgerald") in Spotsylvania County Circuit Court. The charges were ultimately dismissed. Davis now brings this action against Defendants Wal-Mart Stores East, L.P. ("Wal-Mart"), Greer, and Deputy Harney in a thirteen-count Amended Complaint (ECF No. 93),[1] which includes causes of

---

[1] Fitzgerald filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which this Court granted by Memorandum Opinion and Order entered August 31, 2015. (ECF Nos. 22, 23.) Accordingly, Fitzgerald is no longer a party-defendant in the above-captioned matter.

action under 42 U.S.C. § 1983 for violations of her Fourth Amendment rights and various state law claims.[2]

The matter is presently before the Court on Motions to Dismiss filed by Defendants Greer and Wal-Mart (ECF Nos. 96, 100) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, the Motions to Dismiss will be granted.

## I.   BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to her. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewed through this lens, the essential allegations in the Amended Complaint are as follows.

Davis, a former government contractor with a security clearance, suffers from attention-deficit/hyperactivity disorder and mild depression, for which she is prescribed and takes Adderall pills. (Am. Compl. ¶¶ 9–10.) Because Davis did not have medical insurance, her prescribing physician, Dr. Syed Ahmed ("Dr. Ahmed"), agreed to provide Davis with two one-month prescriptions every other month to reduce the frequency of

---

[2] Because Plaintiff's Amended Complaint includes causes of action under 42 U.S.C. § 1983 against Defendants Wal-Mart and Greer (Count VIII) and Deputy Harney (Count XI), 28 U.S.C. § 1331 vests the Court with federal question jurisdiction. Pursuant to 28 U.S.C. § 1367(a), this Court will exercise supplemental jurisdiction over Plaintiff's state law claims, as no exception enumerated in § 1367(c) arises. Virginia law governs the state law claims in Plaintiff's Amended Complaint.

Davis's office visits and ultimately save Davis money. (*Id.* ¶¶ 11–14.) At approximately 9:15 a.m. on Saturday, October 5, 2013, Davis visited a Wal-Mart store to fill her prescription. (*Id.* ¶ 15.) Davis presented her prescription to a pharmacy technician, who informed Davis that it would take approximately an hour to fill the prescription. (*Id.* ¶¶ 17–18.) The technician then gave the prescription to Greer, the Wal-Mart pharmacist. (*Id.* ¶ 20.) Davis remained in Wal-Mart, waiting for the prescription to be filled. (*Id.* ¶ 19.) Allegedly, the prescription appeared facially valid to Greer. (*Id.* ¶ 23.) Greer ran Davis's prescription through the Prescription Monitoring Program ("PMP"), administered by the Commonwealth of Virginia, which allows various medical professionals to record and view an individual's prescription history, as well as the date and location of a transaction. (*Id.* ¶¶ 24–27.) Greer determined that Davis had filled an Adderall prescription for the same amount on October 1, 2013, only four days prior. (*Id.* ¶ 28.) But Greer allegedly also observed a pattern of Davis filling two prescriptions for a one month supply of Adderall within a few days of each other, followed by a hiatus of approximately two months before filling any other Adderall prescriptions. The pattern never exceeded a frequency of one prescription per month from April of 2013 to October of 2013. (*Id.* ¶¶ 29–30.)

Davis alleges that Greer apparently concluded that Davis had a proper patient-provider relationship with Dr. Ahmed and that the prescription was valid, but she was attempting to fill it too soon. (*Id.* ¶¶ 31–33.) Therefore, Greer "called Dr. Ahmed's office and left a voicemail inquiring whether [he] approved of [Davis] filling the prescription at that time"; she also faxed a copy of the prescription to his office. (*Id.* ¶

3

34.) Around the same time, the technician called Davis's cell phone and left her a voicemail noting that Wal-Mart would be unable to fill the prescription until Monday. (*Id.* ¶ 35.)

At 11:14 a.m., Greer called the non-emergency number for the Spotsylvania Sheriff's Office and spoke to a dispatcher, expressing her concern over the prescription, stating: "I have a patient that is turning in prescriptions with the same date on it for the same medicine at two pharmacies, she tried to give me one and she just got it filled at CVS." (*Id.* ¶¶ 36–39.) Davis alleges that Greer made knowingly untrue statements when she described the prescription as a "fake," a "duplicate," and said the signature "looked funny," while not questioning that it appeared to be a facially valid prescription. (*Id.* ¶¶ 39–47.) Greer told the dispatcher that she could get Davis to "come in" but "wanted to wait and see what the deputy wanted to do." (*Id.* ¶ 49.) Greer provided the dispatcher with Davis's name, date of birth, and address. (*Id.* ¶ 52.) The dispatcher told Greer that a deputy was on his way and that the deputy would have Greer summon Davis to the pharmacy upon his arrival. (*Id.* ¶ 53.) Greer never discussed her concerns as to the timing of the prescription with Davis. (*Id.* ¶ 54.)

Deputy Harney was under the impression that Davis was "one of the ones [he had] been looking for." (*Id.* ¶ 67.) He asked the dispatcher to have Wal-Mart locate Davis by using their store cameras, but a Wal-Mart employee was unable to do so. (*Id.* ¶¶ 69–70.) He then called Greer to discuss the situation. (*Id.* ¶ 71.) During the conversation, Greer told Deputy Harney that the pharmacy needed more time to verify the prescription with Dr. Ahmed. (*Id.* ¶ 72.) Further, Greer did not tell Deputy Harney the prescription was

4

fraudulent, but did say that the PMP history was raising some "red flags" and "maybe we should check it out." (*Id.* ¶¶ 73−75.) The Amended Complaint also alleges that, during this conversation, Deputy Harney asked Greer to call Davis back to Wal-Mart, to stall her at the pharmacy, to have someone meet him upon his arrival on one particular side of the building, and to assist him in arresting Davis by identifying her at the pharmacy counter. (*Id.* ¶¶ 79−81, 83−85.)

Greer sent a pharmacy technician to meet Deputy Harney. (*Id.* ¶ 91.) However, Greer apparently never called Davis back to the pharmacy. (*Id.*, Ex. A, Greer Dep. 105:14−15, Nov. 3, 2015, ECF No. 93-1.) Shortly thereafter, Davis returned to the pharmacy unprompted and Greer asked her to wait a few minutes because purportedly, Greer didn't know if her prescription was ready yet. (*Id.* ¶¶ 101−02.) This was intended to stall Davis until Deputy Harney arrived at the store. (*Id.* ¶¶ 107−08.) Once Deputy Harney arrived, he got in the pharmacy line behind Davis. (*Id.* ¶ 113.) Greer then announced Davis's name loudly and nodded at Deputy Harney. (*Id.* ¶ 114.) Deputy Harney then handcuffed Davis, "escorted [her] to the loss prevention room at Wal-Mart with the assistance of another Wal-Mart employee," and interviewed her concerning the prescription. (*Id.* ¶ 116.) Before the arrest, Deputy Harney did not confer with Greer in person, examine the prescription, speak with Davis, speak with Dr. Ahmed, or perform any other independent analysis of the PMP information. (*Id.* ¶ 120.)

Following his interview of Davis, Deputy Harney took her to the Sheriff's Office where she was "booked for violating Virginia Code Section 18.2-258.1(A) and, specifically, attempting to obtain Adderall by fraud." (*Id.* ¶ 128.) Plaintiff alleges that

Deputy Harney did not perform any independent investigation before arresting her and made false statements concerning his purported knowledge of other criminal matters involving Plaintiff. (*Id.* ¶¶ 122, 127.)

On Monday, October 7, 2013, two days after Davis's arrest, Dr. Ahmed informed Wal-Mart pharmacy staff by phone and fax that Davis's prescription was valid and that he approved of it being filled at that time. (*Id.* ¶ 136.) Greer did not attempt to contact the Sheriff's Office after receiving this information from Dr. Ahmed. (*Id.* ¶ 137.) However, about two weeks later, Greer apparently did bring "all that information" to the attention of the Commonwealth's Attorney handling the case. (Greer Dep. 86:1–11.)

After being denied bond, Davis spent sixteen days in jail and suffered from medication withdrawal, allegedly causing her to attempt suicide. (Am. Compl. ¶¶ 141–43.) Deputy Harney allegedly misinformed the Assistant Commonwealth's Attorney ("ACA") that the Deputy had intelligence suggesting that Davis had been involved in other prescription fraud activity, which the ACA allegedly relied upon. (*Id.* ¶¶ 144–47.) The Spotsylvania County Commonwealth's Attorney initiated prosecution of Davis for prescription fraud in the Spotsylvania County Circuit Court, but the charges were ultimately dismissed. (*Id.* ¶¶ 148–50.) Plaintiff alleges that before the charges were dismissed, the circuit court judge stated that he had "no doubt that . . . [Ms. Davis's] constitutional rights were violated by the precipitous arrest." (*Id.* ¶ 150.) These events caused Davis to lose her security clearance and the government contracts she had been working on. (*Id.* ¶ 151.)

Davis now brings this civil action against Wal-Mart, Greer, and Deputy Harney for alleged violations of her Fourth Amendment rights resulting from this incident. Plaintiff alleges that Deputy Harney failed to conduct an adequate investigation of the prescription's validity before placing her under arrest. (*Id.* ¶ 120.)

In her Amended Complaint, Plaintiff brings thirteen claims, the following seven of which are against Wal-Mart and Greer jointly: (1) Count I: False Imprisonment; (2) Count II: Intentional Infliction of Emotional Distress; (3) Count III: Negligence, Gross Negligence, and Willful and Wanton Negligence; (4) Count VII: Malicious Prosecution; (5) Count VIII: 42 U.S.C. § 1983 Civil Conspiracy; (6) Count IX: Medical Malpractice; and (7) Count X: Negligence Per Se. Count IV is a Negligence claim against Wal-Mart. Counts V and VI assert Assumption of Duty Claims against Greer and Wal-Mart, respectively. Count XI asserts a 42 U.S.C. § 1983 claim against Deputy Harney. Counts XII and XIII seek punitive damages against Wal-Mart, Greer, and Deputy Harney.

Greer and Wal-Mart filed their Motions to Dismiss with briefs in support thereof on December 23 and 26 of 2015 (ECF Nos. 96, 100). Deputy Harney has not filed a motion to dismiss. Plaintiff filed briefs in opposition to the motions on January 4 and 8 of 2016 (ECF Nos. 103, 105), to which Wal-Mart and Greer have replied (ECF Nos. 104, 108). The Court held oral argument on March 22, 2016. The Motions to Dismiss are now ripe for decision.

## II.   LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

(4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only

'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.

Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual

allegations," but must contain "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations

omitted). The "[f]actual allegations must be enough to raise a right to relief above the

speculative level" to one that is "plausible on its face." *Id.* at 555, 570 (citation omitted).

   To survive Rule 12(b)(6) scrutiny, a complaint only need contain "enough facts to

state a claim to relief that is plausible on its face." *Id.* at 570. A complaint achieves

facial plausibility when the facts contained therein support a reasonable inference that the

defendant is liable for the misconduct alleged. *Id.* at 556; *see also Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court

to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d

186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). In considering such a motion,

a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the

light most favorable to her. *T.G. Slater & Son*, 385 F.3d at 841 (citation omitted).

## III.   DISCUSSION

   Initially, the Court notes that with respect to Davis's state law claims, this Court

applies the substantive law of the Commonwealth of Virginia, while employing the

procedural law of the Fourth Circuit to weigh the factual sufficiency of the pleadings. *See Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1371 (Fed. Cir. 2003).

## A.    Count I: False Imprisonment

"False imprisonment is restraint of one's liberty without any sufficient legal excuse." *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 489 (1948); *see also S. H. Kress & Co. v. Roberts*, 143 Va. 71, 75 (1925). The Virginia Supreme Court has "defined false imprisonment as 'the direct restraint by one person of the physical liberty of another without adequate legal justification.'" *Jordan v. Shands*, 255 Va. 492, 497 (1998) (quoting *W.T. Grant Co. v. Owens*, 149 Va. 906, 921 (1928)). The tort of false imprisonment is akin to the torts of assault and battery and by definition involves "the deprivation of an individual's freedom by physical restraint or the threat of such restraint." *Jordan*, 255 Va. at 497. It is possible to be liable for false imprisonment even if one does not apprehend the plaintiff herself, but requests or directs another to do so. *See Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 142 (D.D.C. 2005); *Montgomery Ward & Co.*, 188 Va. at 489–90.

In this case, it is not alleged that Greer or any other Wal-Mart employee touched, physically restrained, or threatened to physically restrain Davis. No facts indicate that Greer or Wal-Mart actively directed, procured, or even suggested the arrest of Davis. All of the actions undertaken by Greer or other Wal-Mart employees, such as meeting Deputy Harney, stalling Davis, and identifying Davis, were at the direction or request of Deputy Harney. While Greer's phone call certainly put the wheels in motion, Deputy Harney is the only person who physically restrained Davis; no one asked or directed him

to do so. In fact, Greer specifically stated that she "wanted to wait and see what the Deputy wanted to do." (Am. Compl. ¶ 49.) Greer and Wal-Mart did not restrain Davis, either by physical force or threat.

Further, Wal-Mart is not liable for false imprisonment simply because it acquiesced to a police officer's request to allow him to use their room to speak with an arrestee. If a private company or individual could be liable simply for allowing law enforcement to question someone on premises, it could seriously inhibit basic cooperation with police, as private citizens would normally be unable to determine whether or not probable cause for such action exists. Plaintiff fails to allege facts that plausibly support a claim of false imprisonment. Accordingly, Count I will be dismissed without prejudice.

## B.    Count II: Intentional Infliction of Emotional Distress

Four elements must be shown to state a claim for intentional infliction of emotional distress: (1) defendant's conduct must be intentional or reckless, (2) defendant's conduct must be outrageous and intolerable, (3) defendant's conduct must cause the emotional distress, and (4) the distress must be severe. *Russo v. White*, 241 Va. 23, 26 (1991) (citing *Womack v. Eldridge*, 215 Va. 338, 342 (1974)).

The Amended Complaint states in a conclusory fashion that Greer and Wal-Mart knowingly made false accusations. (Am. Compl. ¶ 158.) The allegations show that the PMP clearly revealed consecutive prescriptions filled within a very short time-frame. This plausibly fostered suspicion on Greer's part, so she contacted law enforcement via a non-emergency number. In retrospect, Greer may have exercised poor judgment in not

simply inquiring about the sequence of prescriptions with Davis or for prematurely calling the police before hearing back from Dr. Ahmed. Further, one might question Greer's failure to immediately contact the Sheriff's Office after she had heard from Dr. Ahmed two days after this incident. But even that failure does not reach the requisite level of outrageousness or intolerability, especially given that there are no facts indicating that Greer knew Davis remained in jail. It is not unreasonable to assume that once the police undertake responsibility for investigating a complaint of suspicious activity, they would make logical inquiries. Further, it seems that Greer eventually did turn over information, including what she had heard from Dr. Ahmed, to the Commonwealth's Attorney handling the case. Simple errors in judgment, such as these by Greer, fall short of the mark. Accordingly, the other elements of the claim need not be addressed, and Count II will be dismissed without prejudice.

C.     **Count III: Negligence, Gross Negligence, and Willful and Wanton Negligence**

Negligence is akin to heedlessness, inattention, or inadvertence. *Boward v. Leftwich*, 197 Va. 227, 231 (1955). To plead a viable claim of negligence, one must allege the existence of a legal duty, a breach of the duty, and causation which leads to damage of some kind. *See McGuire v. Hodges*, 273 Va. 199, 205–06 (2007).

Gross negligence is such a degree of negligence that it would shock fair minded people. *Koffman v. Garnett*, 265 Va. 12, 15 (2003) (citing *Ferguson v. Ferguson*, 212 Va. 86, 92 (1971)). It is a degree of negligence that shows an indifference to others, an utter disregard of prudence that amounts to a complete neglect of the safety of another. *Id.*

A more aggravated species of negligence, willful and wanton negligence, can be described as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Cowan v. Hospice Support Care*, 268 Va. 482, 487 (2004) (quoting *Etherton v. Doe*, 268 Va. 209, 213–14 (2004)).

In essence, the Amended Complaint alleges that, inter alia, Greer made arguably false statements to law enforcement, disclosed confidential information, played a role in the arrest of Davis, and failed to timely report additional information. (Am. Compl. ¶ 170.) After checking the PMP, Greer's suspicions were raised that Davis may be attempting to prematurely fill a prescription. (*Id.* ¶ 33.) Before calling the non-emergency police line, Greer contacted Dr. Ahmed's office by calling, leaving a voicemail, and faxing. (*Id.* ¶ 34.) She didn't receive a return call from Dr. Ahmed until two days later. (*Id.* ¶ 136.) Having not heard back from Dr. Ahmed, the pharmacy left a message for Davis, indicating that they could not fill the prescription that day. (*Id.* ¶ 35.) Greer then called the non-emergency police number. (*Id.* ¶ 36.) Greer explained the situation, initially calling the prescription a "fake," but then qualifying that it may be a "duplicate" when the dispatcher sought clarification. (*Id.*, Ex. D, Tr. Greer Call to Non-Emergency Number ("Call Tr.") 1, ECF No. 93-4.) Thereafter, Greer essentially followed the instructions of Deputy Harney. Greer clearly stated that her intentions were to await instructions from the Deputy. (*Id.* ¶ 49.) Thereafter, Greer asked Davis to wait and later identified her to Deputy Harney. (*Id.* ¶¶ 102, 114.)

Even taking the alleged facts in the light most favorable to the Plaintiff, they are insufficient to plead a plausible claim for negligence of any kind, in part because no duty was breached. While one may certainly question the wisdom or prudence of Greer's decisions throughout this incident, the allegations do not plausibly amount to negligence. Greer received a prescription that did not have written instructions from the prescribing doctor indicating when it should be filled. (Greer Dep. 75:4–10.) Federal regulations require that when a practitioner is issuing simultaneous multiple prescriptions of a Schedule II drug, the prescribing doctor must provide written instructions on the prescription indicating the earliest date it can be filled, which apparently was not done in this case. *See* 21 U.S.C. §§ 821, 871; 21 CFR § 1306.12. The fact that the prescription was not in compliance with federal regulations, coupled with the PMP information, was enough to give Greer legitimate reason to question this prescription and be concerned.

Two days after the arrest, Greer learned from Dr. Ahmed that the prescription was valid and that he approved of it being filled. (Am. Compl. ¶ 136.) At that point, Greer did not attempt to contact the Sheriff's Office to relay this information. (*Id.* ¶ 137.) Yet, there are no allegations that Greer knew Davis was still being detained two days after the arrest. Furthermore, it was completely reasonable for Greer to assume that law enforcement would have been in touch with Dr. Ahmed as part of their follow-up investigation. Virginia law imposes no duty upon one who reports something suspicious to the police to do an independent investigation or follow up. The reporting individual also has no obligation to ensure that the investigating officer has probable cause before making an arrest—this is the duty of law enforcement, not the reporting citizen. While it

is possible that one who actively swears out a warrant may assume some duty or that one who actively supports a knowingly false story could incur liability, neither situation exists here. *See, e.g., Clarke v. Montgomery Ward & Co.*, 298 F.2d 346, 347–48 (4th Cir. 1962); *Lewis v. Gupta*, 54 F. Supp. 2d 611, 613–15 (E.D. Va. 1999); *Egan v. Butler*, 290 Va. 62, 68–69 (2015).

While the Court does not specifically rely on statutory immunity in dismissing Count III, it should be noted that Virginia law provides a safe harbor for pharmacists and other providers in reporting information to law enforcement. For example, Va. Code § 54.1-3408.2 protects reporting pharmacists, stating that if they have

> reason to suspect that a person . . . attempted to obtain a controlled substance or prescription for a controlled substance by fraud or deceit, [they] may report the activity to the local law-enforcement agency for investigation. Any person who, in good faith, makes a report or furnishes information or records to a law-enforcement officer . . . shall not be liable for civil damages in connection with making such report or furnishing such information or records.

It seems that this immunity statute would at least protect Greer as far as the initial call to law enforcement, given the absence of any plausible evidence of bad faith.

Further, 18 Va. Admin. Code § 110-20-270 (E) prevents a pharmacist from returning a prescription if the "pharmacist determines from a prescriber or by other means, including the use of h[er] professional judgment, that a prescription presented for dispensing is a forgery. . . . The forged prescription may be given to a law-enforcement official investigating the forgery." Additionally, health care entities may disclose health records "[t]o law-enforcement officials if the health care entity believes in good faith that

the information disclosed constitutes evidence of a crime that occurred on its premises."

Va. Code § 32.1-127.1:03(D)(31).

The sweep of Virginia law would indicate that a reasonable pharmacist is able to

contact law enforcement and report information if faced with a legitimate concern or

suspicion.   Greer had reason to suspect the prescription presented by Davis contained a

disturbing irregularity.   There are no facts plausibly indicating a lack of good faith.

Because Plaintiff fails to identify any particular duty that Greer or Wal-Mart breached,

and because the actions of Greer could not have foreseeably led to all of Davis's alleged

injuries, Count III will be dismissed without prejudice.

## D.     Count IV: Negligence Against Wal-Mart

Plaintiff asserts that Wal-Mart was negligent in their training of Greer.  (Am.

Compl. ¶ 177.)  Yet, after Wal-Mart filed its apparently persuasive response, Plaintiff

concurs with Wal-Mart's position.  (Mem. Opp'n Mot. Dismiss 8, ECF No. 105.)

Accordingly, Count IV will be dismissed without prejudice.

## E.     Counts V and VI: Assumption of Duty

Plaintiff asserts claims of assumption of duty, separate and apart from her

negligence claims against Defendants.  (Am. Compl. ¶¶ 180–89.)  Plaintiff alleges that

when the pharmacy technician under Greer's supervision accepted Davis's prescription,

Greer assumed the duty not to harm Davis in filling her prescription.  (*Id.* ¶181.)

The Virginia Supreme Court has recognized the common law principle of

assumption of duty, finding in *Kellerman v. McDonough* that "[i]t is ancient learning that

one who assumes to act, even though gratuitously, may thereby become subject to the

duty of acting carefully, if he acts at all." 278 Va. 478, 489 (2009) (quoting *Nolde Bros. v. Wray,* 221 Va. 25, 28 (1980)). Virginia courts recognize that assumption of duty may serve as a theory for establishing the requisite legal duty underlying a prima facie claim of negligence. *See Kellerman,* 278 Va. at 489; *Didato v. Strehler,* 262 Va. 617 (2001). In *Kellerman,* the Virginia Supreme Court found that plaintiff's allegations properly established a cause of action against one of the defendants based on an assumption of duty theory. 278 Va. at 489. However, that cause of action was brought within the plaintiff's wrongful death suit, and assumption of duty served as a theory for establishing that defendant had a legal duty to plaintiff's child. *Id.* at 489−95. Virginia courts have not recognized assumption of duty as a freestanding cause of action, as Plaintiff tries to assert here. Accordingly, Counts V and VI of Plaintiff's Amended Complaint will be dismissed without prejudice.

**F.      Count VII: Malicious Prosecution**

"In an action for malicious prosecution, the plaintiff must prove that the prosecution was: (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei,* 281 Va. 715, 722 (2011). Malicious prosecution claims are "not favored in Virginia" and the requirements are stricter than those applied to other tort claims. *Id.* at 722−23.

Malice is any "controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier,* 255 Va. 330, 333 (1998). The Amended Complaint

alleges in a conclusory fashion that Greer and Wal-Mart acted with malice. (Am. Compl. ¶ 191.) Greer observed a pattern of Davis filling two prescriptions for a one month supply of Adderall within a few days of each other. (*Id.* ¶¶ 29–30.) The prescription lacked the federally-required written instructions from the prescribing physician. After calling and faxing the prescribing doctor, Greer called the non-emergency line for local law enforcement to report this activity, which seemed suspicious to her. (*Id.* ¶¶ 34, 36.)

Even taken in the most favorable light to the Plaintiff, including the allegations of misstatements and imprudent assistance to law enforcement, the alleged facts do not plausibly reflect malice on the part of Greer. This is not a case where someone has sworn out a warrant and then withheld exculpatory information or actively supported a knowingly false allegation to law enforcement. *See, e.g., Clarke*, 298 F.2d at 347–48; *Lewis*, 54 F. Supp. 2d at 613–15; *Egan*, 290 Va. at 68–69. Even the fact that Greer did not immediately contact law enforcement after hearing back from Dr. Ahmed is tempered by Greer later providing that information to the Commonwealth's Attorney. (Greer Dep. 86:1–11.) Beyond that, there is no indication whatsoever that Greer knew Davis was still in custody at the time Dr. Ahmed contacted the pharmacy. There are simply no facts that create a plausible inference that Greer acted out of malice.

A witness who provides incorrect information during a criminal investigation does not institute or procure the prosecution. *See Brice v. Nkaru*, 220 F.3d 233, 238 (4th Cir. 2000). Further, a witness that honestly provides information to law enforcement may not "be held responsible for the official's execution of his independent duty to investigate." *Id.* at 238–39. The Fourth Circuit has approvingly embraced the proposition that

"normally a malicious prosecution plaintiff must show that defendant did more than merely give information . . . *e.g.*, that he requested the initiation of the proceedings, signed a complaint, or swore out an arrest warrant against a plaintiff." *Id.* at 239 (citing 66 A.L.R. 3d 10 Summary § 3 (1975)). Likewise, where a defendant merely reported "events to the police, gave information to the police, and responded to police requests to verify suspect's identity, then that individual cannot be held liable for malicious prosecution so long as the information provided was with an honest or good faith belief of the facts reported." *Bennett v. R&L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 512 (E.D. Va. 2010).

The Amended Complaint alleges that Greer noticed that a similar prescription had been filled days before, contacted law enforcement, expressed her desire to wait for instructions from the Deputy, sent an employee to meet the Deputy, asked Davis to wait a few minutes, and then identified Davis to the Deputy. (Am. Compl. ¶¶ 28, 36, 49, 85, 91, 102, 114, 115.) Even taken as true, these facts neither plausibly indicate malice or ill-will, nor that Greer or Wal-Mart instituted the prosecution. Accordingly, Count VII will be dismissed without prejudice.

## G.    Count VIII: 42 U.S.C. § 1983 Civil Conspiracy

Any person acting under color of any statute who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983. Private parties can be liable under 42 U.S.C. § 1983 if they conspire to commit, or are jointly engaged in, prohibited actions with state

officials. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). To establish a conspiracy under 42 U.S.C. § 1983, the non-state actor must act in concert with the state official and overtly act in furtherance of the conspiracy, resulting in the deprivation of another's constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

While the alleged facts may create a plausible inference that Davis's Fourth Amendment rights were violated if Deputy Harney arrested her while lacking probable cause, they fail to credibly suggest Greer or Wal-Mart shared a common objective with Deputy Harney to effect Davis's arrest, in violation of her constitutional rights. The Amended Complaint notes that Greer counseled caution, wanting "to wait and see what the Deputy wanted to do." (Am. Compl. ¶ 49.) Further, Greer advised Deputy Harney that the pharmacy "needed more time to verify the . . . prescription with Dr. Ahmed." (*Id.* ¶ 72.) While Greer did comply with requests from Deputy Harney, the Amended Complaint fails to lend credence to Plaintiff's claim that they were acting in concert to effect her arrest.

After the initial call, Greer was essentially passive, awaiting information and instruction. She provided only the cooperation and assistance requested. Deputy Harney had told Greer "I need to talk to her, I've been trying to talk to her about something" and Greer noted that "he seemed pretty eager that he needed to talk to her." (Greer Dep. 105:11–12, 115:18–19.) Further, Greer actually did not comply with one request by Deputy Harney, which was to affirmatively call Davis back to the pharmacy.

Central to a claim of conspiracy is proof of an agreement to pursue a common objective. The alleged facts fail to show that Greer shared the same objective as Deputy Harney, namely to place Davis under arrest as opposed to inquiring about the legitimacy of the prescription. In fact, Greer and Deputy Harney had very little substantive communication, only a brief call in which Deputy Harney told Greer that he wanted to talk to Davis about "something" and Greer said "maybe we should check it out." (Am. Compl. ¶¶ 72–82.) Plaintiff contends that Greer somehow suggested a course of action by saying "maybe we should check it out" or indicating that she could call Davis to the pharmacy counter. (Id. ¶ 75; Call Tr. 2.) But she immediately added that she wanted to wait and see what the Deputy wanted to do. (Am. Compl. ¶ 49; Call Tr. 2.) Greer was aware that the Deputy was eager to speak to Davis, suggesting that he had other information concerning Davis's activities. (Greer Dep. 105:11–12, 108:18–21, 115:18–19; Am. Compl., Ex. C, Danielle Ynoa Dep. 30:1–13, 31:7–11, Nov. 12, 2015, ECF No. 93-3.) Even tipped in Plaintiff's favor, the Amended Complaint presents no fact plausibly portraying Greer's response to the Deputy's requests or suggestions as the type of common scheme or plan that would support a claim of conspiracy under 42 U.S.C. § 1983. Accordingly, Count VIII will be dismissed without prejudice.

## H.    Count IX: Medical Malpractice

Plaintiff argues that Greer's conduct breached the standard of care for health professionals and establishes a claim of medical malpractice. Medical malpractice in Virginia "means any tort action or breach of contract action for personal injuries or wrongful death, based on healthcare or professional services rendered, or which should

20

have been rendered, by a health care provider, to a patient." Va. Code § 8.01-581.1. A

plaintiff must prove that defendant's breach of the applicable standard of care was the

proximate cause of her injuries. *Franklin v. K-Mart Corp.*, 997 F. Supp. 2d 453, 457

(W.D. Va. 2014). For medical negligence in Virginia, the applicable standard of care is

"that degree of skill and diligence practiced by a reasonably prudent practitioner in the

field of practice or specialty." Va. Code § 8.01-581.20. That being said, Virginia seems

to recognize only one duty of care for pharmacists: the duty to correctly fill prescriptions.

*Goulmamine v. CVS Pharmacy, Inc.*, 2015 WL 5920009, at *7 (E.D. Va. Oct. 9, 2015)

(citing *Franklin*, 997 F. Supp. 2d at 461; *Nichols v. Kaiser Found. Health Plan of the*

*Mid-Atl. States, Inc.*, 257 Va. 491 (1999)).

     The Amended Complaint states in a conclusory fashion that Defendants breached

the standard of care for health care professionals by knowingly making false statements

to law enforcement, disclosing Plaintiff's confidential PMP data, deceiving Davis to aid

Deputy Harney's arrest, and failing to contact law enforcement after confirming the

legitimacy of Davis's prescription. (Am. Compl. ¶ 203.) However, none of these acts

constitutes a breach of the applicable standard of care for pharmacists. Greer's only duty

within her capacity as a health care professional is to correctly fill prescriptions. Since

Plaintiff has not alleged that Greer failed to correctly fill Davis's prescription, Davis

cannot fit Greer's conduct within the scope of medical malpractice. This being the case,

this Court need not address other arguments related to this claim, such as Plaintiff's

possible failure to obtain certification from an expert finding that the defendant has

deviated from the standard of care. *See* Va. Code § 8.01-20.1. The assertions concerning

negligence are not subsumed by Virginia's Medical Malpractice law. Nothing alleged by

Davis plausibly states a claim for medical malpractice. Accordingly, Count IX will be

dismissed without prejudice.

### I.    Count X: Negligence Per Se

Negligence *per se* requires a plaintiff to show that: (1) the tortfeasor owed to

plaintiff a duty of care; (2) a statute set the standard of care for that duty; (3) the

tortfeasor violated the standard set forth by the statute; (4) the statute was enacted for

public health and safety reasons; (5) the plaintiff was a member of the class protected by

the statute; (6) the injury was intended to be covered by the statute; and (7) the violation

of the statute proximately caused plaintiff's injury. *Steward v. Holland Family Props.*

*LLC*, 284 Va. 282, 287 (2012) (citing *McGuire v. Hodges*, 273 Va. 199, 206 (2007)).

Plaintiff claims that by disclosing Davis's confidential PMP data to law enforcement,

Greer violated Va. Code § 54.1-2525(A)–(B) and 18 Va. Admin. Code § 110-20-

25(2),(4).

Under, Va. Code § 54.1-2525(A)–(B) it is unlawful to make disclosures of

confidential information from the PMP to unauthorized persons. Neither party disputes

that Greer disclosed Davis's confidential information from the PMP to law enforcement.

However, Va. Code § 54.1-2525 establishes a standard of conduct designed to protect

individual privacy, not create a duty to safeguard against false arrest. Consequently,

Plaintiff may not use an alleged violation of this statute to establish a claim for

negligence *per se* with these facts.

Additionally, Plaintiff contends that Greer violated the standard of professional conduct for pharmacists in subsections 2 and 4 of 18 Va. Admin. Code § 110-20-25, which refer to a breach of patient confidentiality and disruptive or abusive behavior that interferes with the quality of patient care, respectively. Greer's actions were neither disruptive nor abusive. The obvious legislative intent is to safeguard against the unauthorized dissemination or abuse of confidential information. No court has ever construed these regulations as inhibiting law enforcement from using the information base to investigate suspicious prescription activity.

Accordingly, Count X will be dismissed without prejudice.

## IV. CONCLUSION

Based on the foregoing analysis, the Motions to Dismiss filed by Wal-Mart and Greer will be granted. Counts I, II, III, IV, V, VI, VII, VIII, IX, and X will be dismissed without prejudice. No party has moved to dismiss Count XI, the 42 U.S.C. § 1983 claim against Deputy Harney, so that claim will proceed on the merits. Greer and Wal-Mart will be dismissed as party-defendants in the above-captioned matter.

An appropriate Order will accompany this Memorandum Opinion.

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　Henry E. Hudson
　　　　　　　　　　　　　　　　United States District Judge

Date: April 13, 2016
Richmond, Virginia